IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-140-FL

| | | |
|---|---|---|
| JENNIFER HEATH HOLLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Jennifer Heath Holland[1] challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 19, 22). Both filed memoranda in support of their respective motions (D.E. 20, 23). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 1st Minute Entry dated 3 Feb. 2014). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.      **BACKGROUND**

A.      **Case History**

Plaintiff filed an application for DIB on 9 October 2010 alleging the onset of disability on 1 January 2004. Transcript of Proceedings ("Tr.") 11. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 11. On 6 August 2012, a

---

[1] Plaintiff Jennifer Heath Holland is referred to variously herein as "plaintiff," "the claimant," or "Ms. Holland."

video hearing was held before an Administrative Law Judge ("ALJ") at which plaintiff and her husband testified.[2] Tr. 81-116. A supplemental hearing was held on 13 September 2012 to take testimony from an impartial vocational expert. Tr. 117-29. The ALJ issued a decision denying plaintiff's claim on 21 September 2012. Tr. 11-22. Plaintiff timely requested review by the Appeals Council. Tr. 5-7. On 23 April 2013, the Appeals Council denied the request for review. Tr. 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 4 June 2013, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1), Order Denying Mot. (D.E. 4), Compl. (D.E. 5)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. 423(d)(3).

---

[2] On 21 March 2012, a hearing before another ALJ was convened but promptly continued without the taking of any evidence to allow plaintiff to obtain copies of medical records which had not been submitted. Tr. 75-80.

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

To establish entitlement to DIB, a claimant must show not only that he is disabled, but also that the disability began before the date of expiration of his disability insured status, known as the "date last insured" ("DLI"). 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

### C.      Findings of the ALJ

Plaintiff was 48 years old on the alleged onset date of disability, 51 years old on her DLI, and 57 years old on the date of the hearing. *See* Tr. 20 ¶ 7; 88. She has at least a high school education. Tr. 20 ¶ 8; 88.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date of 1 January 2004 through her DLI of 31 December 2006. Tr. 13 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations: generalized anxiety disorder. Tr. 13 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 14 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of work at all exertional levels with mental restrictions. Tr. 15 ¶ 5. Specifically, the ALJ found that plaintiff

> could understand, remember, and carry out simple instructions. She could sustain attention for simple tasks. She could tolerate interaction with coworkers and supervisors on an occasional basis. She was not able to interact with the public. She could not work at a production pace. She required a job where work decisions would be concrete and based on standardized circumstances. She also required a job with a predictable schedule. In addition, she needed an object-focused work environment.

Tr. 15 ¶ 5.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 20 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of silverware wrapper, merchandise marker, and routing clerk. Tr. 21 ¶ 5. The ALJ accordingly concluded that plaintiff had not been under a disability at any time from her alleged onset date through her DLI. Tr. 22 ¶ 11.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based

on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. DISCUSSION

### A. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred in (1) finding that her mental impairment did not meet or medically equal Listing 12.06; (2) determining that she had the RFC to perform a full range of work at all exertional levels with mental limitations; and (3) assessing plaintiff's credibility. The court will address each issue separately.

### B. ALJ's Determination regarding Listing 12.06

#### 1. Listings Generally

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

As indicated, even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. and recommendation adopted by* Order (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

## 2.      Listing 12.06

Listing 12.06 for anxiety-related disorders is met if an individual meets or medically

equals the A and B criteria or the A and C criteria.  Listing 12.06.[3]  Plaintiff argues that she

meets or medically equals the A and B criteria.  With respect to the A criteria, plaintiff contends

that she has recurrent severe panic attacks that meet the criteria.  *See* Listing 12.06A.  As to B

criteria, she argues that as a result of the alleged recurrent panic attacks she has marked

difficulties in maintaining social functioning and marked difficulties in maintaining

concentration, persistence, or pace.  *See* Listing 12.06B2, -3.[4]  The C criteria, which require a

---

[3] Listing 12.06 reads:

12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning;
or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
OR
C. Resulting in complete inability to function independently outside the area of one's home.

Listing 12.06.

[4] For the first three functional areas in the B criteria, the ratings, in order of increasing level of limitation, are none, mild, moderate, marked, and extreme.  *See* 20 C.F.R. § 404.1520a(c)(4); Listing 12.00C1-3. The last area—repeated

---

disorder specified in the A criteria resulting in the complete inability to function independently outside the area of the home, is not at issue because plaintiff does not allege that she satisfies them.

In her decision, the ALJ found that plaintiff did not meet or medically equal Listing 12.06 because she did not satisfy the B criteria or C criteria, although, as indicated, the C criteria are not at issue. The ALJ stated her rulings on the B criteria and her reasons for them as follows:

> In activities of daily living, the claimant had no restriction. She was able to perform self-care activities, household chores, and other activities of daily living independently.
>
> In social functioning, the claimant had moderate difficulties. She felt overwhelmed when under stress but she was able to interact appropriately with family, friends, and her medical treatment sources.
>
> With regard to concentration, persistence, or pace, the claimant had moderate difficulties. She had panic attacks when stressed but she was able to complete tasks in a timely manner.
>
> As for episodes of decompensation, the claimant had experienced no episodes of decompensation of extended duration. She did not require any prolonged periods of inpatient or emergency outpatient treatment for her mental condition.
>
> Because the claimant's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

Tr. 15 ¶ 4.

The reasons cited by the ALJ for finding plaintiff to have only moderate difficulties in social functioning and concentration, persistence, or pace are supported by substantial evidence of record. The ALJ's subsequent review and analysis of the evidence elucidates the supporting

---

episodes of decompensation, each of extended duration—means three episodes within one year or an average of one every four months, each lasting at least two weeks. *See* Listing 12.00C4.

evidence as well as more specific reasons for her findings regarding social functioning and concentration, persistence, or pace.[5]

Among other relevant findings, the ALJ notes that when plaintiff first saw her treating psychiatrist Celeste Good, M.D., on 24 October 2004, her concentration was normal and Dr. Good gave her a Global Assessment of Functioning ("GAF") score of 50, signifying only moderate impairment. Tr. 19 ¶ 5. The ALJ further found that during the subsequent period of treatment by Dr. Good, until October 2007, plaintiff showed improvement with the psychiatric medications and psychotherapy and that although she felt overwhelmed at times at work, she had mostly good days. Tr. 19 ¶ 5. The ALJ also noted that when plaintiff resumed treatment in January 2010,[6] the provider, Elizabeth Lynn Hutchins, N.P., found plaintiff's GAF score to be 52, again indicating only moderate impairment, even after two years without treatment. Tr. 19 ¶ 5. Additional evidence supporting the ALJ's listing determination is discussed below in connection with the ALJ's RFC and credibility determination.

In support of her contention that she had marked difficulties in social functioning and concentration, persistence, or pace, plaintiff cites to selected portions of the medical records.

---

[5] The fact that the evidence and reasons supporting the ALJ's listing determination are not all set out at step three of the sequential analysis does not constitute legal error since the decision read as a whole makes them clear. *See, e.g., Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Lydia v. Astrue*, No. 2:11–1453–DCN–BHH, 2012 WL 3304107, at *5 (D.S.C. 25 Jul. 2012) ("This sort of deconstruction of the ALJ's decisions is not useful. The ALJ's decision must be read as a whole."), *rep. and recommendation adopted by* 2012 WL 3308108 (13 Aug. 2012); *Finley v. Astrue*, No. 5:08–CV–209–D(1), 2009 WL 2489264, at *5 (E.D.N.C. 8 Jul. 2009) ("[T]he ALJ's decision may appropriately be read 'as a whole.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3rd Cir. 2004))), *mem. and recommendation accepted by* 2009 WL 2489264, at *1 (13 Aug. 2009).

[6] The ALJ notes that since the treatment records from 2010 were for providers who did not treat plaintiff prior to her DLI, no weight was given to those opinions. Tr. 20. Similarly, treating source statements submitted by plaintiff from Elizabeth Lynn Hutchins, N.P., dated 6 October 2010, and Dr. Richard Serrano dated 28 January 2011 were not given any weight since neither treating source saw plaintiff prior to her DLI. Tr. 20. Likewise, state agency medical consultants, Drs. Rudy Warren, Banu Krishnamurthy, and E. Woods, concluded that there was insufficient medical evidence prior to the DLI upon which to evaluate the severity of plaintiff's condition. Tr. 20.

(*See* Pl.'s Mem. 15-16).[7]   It is apparent, though, from the ALJ's thorough discussion of the medical evidence that she considered the evidence plaintiff cites.  *See* Tr. 18-19.  Plaintiff cites to nothing indicating that the ALJ did not lawfully weigh this evidence, which itself certainly does not mandate findings that she has marked difficulties in social functioning or concentration, persistence, or pace.

Plaintiff also relies on her own testimony, in which she describes her limitations as disabling.  (*See* Pl.'s Mem. 16).[8]  The ALJ reviewed plaintiff's testimony extensively in her decision (Tr. 16-18 ¶ 5), and, as discussed below (in section C), properly determined the testimony not to be fully credible (*see* Tr. 19 ¶ 5).

---

[7] Plaintiff states as follows:

> Ms. Holland did seek treatment for her anxiety disorder prior to the date last insured.  She began treating at Medical Park Psychiatric Associates on October 16, 2004.  At that time she reported an onset of problems for about three years when she experienced a panic attack.  She subsequently developed depressive symptoms. During her evaluation she appeared anxious.  She was diagnosed with panic attacks and assigned a global assessment of functioning (GAF) score of 50.  Ms. Holland was continued on Klonopin and Lexapro. She followed up on November 29, 2004 and was started on Sonata. She continued to treat with Medical Park Psychiatric on a regular basis during 2005. (T pp. 879-890)

> She followed up with Medical Park Psychiatric Associates on May 8, 2006 with reports of increased muscle pain and reporting that she was not able to get any relief. She experienced increased crying spells and difficulty coping with stress. She was started on a trial of Cymbalta. (T p. 877)

> Ms. Holland continued to follow up with Medical Park Psychiatric Associates during 2006 and 2007.  During her last visit on October 24, 2007 she reported that she was under a lot of stress and was experiencing severe symptoms of depression.  She felt overwhelmed and had increased worrying. She was continued on Lexapro, Klonopin and Flexeril. (T pp. 870-876)

(Pl.'s Mem. 15-16).

[8] Plaintiff stated:

> During the August 6, 2012 hearing Ms. Holland offered testimony about the severity of her anxiety disorder. She described crying spells, headaches and difficulty with concentration. (T p. 93) Ms. Holland testified that she had to quit her job at Mayo Knitting due to panic attacks. She was crying all the time and could not handle her responsibilities at home or work. (T pp. 104-105) Ms. Holland stated that during the panic attacks she had constant pressure in her chest and had difficulty breathing. Her blood pressure also spiked. The panic attacks led her to seek psychiatric help. (T p. 105)

(Pl.'s Mem. 16).

The court concludes that the ALJ's determination that plaintiff did not meet or medically equal the B criteria and therefore that she did not meet or medically equal Listing 12.06 is supported by substantial evidence and based on the proper legal standards. Plaintiff's challenge to the ALJ's listing determination should accordingly be rejected.

### C.     RFC Determination

Plaintiff challenges the ALJ's determination that she has the mental RFC to work. She argues that due to her anxiety disorder she lacks the capacity to deal with changes in work routine and to respond appropriately to work stress on a sustained (*i.e.*, regular) and continuing basis. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996) (defining "regular and continuous" as eight hours per day for five days a week or its equivalent); Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *9 (2 July 1996) (setting out basic mental activities generally required for competitive, remunerative, unskilled work). The court finds no error.

Substantial evidence supports the ALJ's RFC determination. This evidence includes the records of plaintiff's psychiatric treatment, which the ALJ reviewed as follows:

> The longitudinal medical record reveals that the claimant began treatment at Medical Park Psychiatric Associates on October 24, 2004. She was seen for intake by Celeste Good, M.D. The claimant said that she developed panic attacks in 2001 when she was under stress at work. She subsequently developed depressive symptoms. She began taking paxil and improved with this medication. She had stopped taking paxil just before this visit due to adverse side-effects. She had begun taking lexapro but her panic attacks returned. These were characterized by chest pain and shortness of breath. She also had impaired sleep and gastrointestinal symptom, which she related to stress. On examination, Dr. Good observed that the claimant's mood and affect were anxious and her thought processes were obsessive. However, her other mental status findings, including psychomotor activity, speech, attention, and concentration, were normal. She denied having any suicidal ideations. Dr. Good diagnosed the claimant with a panic disorder and a generalized anxiety disorder. She rated the claimant's global assessment of function (GAF) at 50 indicating only moderate impairment of function. She further rated the GAF for the prior year at 70 indicating a past history of only mild impairment of function (Exhibit 26F).

Dr. Good continued to treat the claimant through October 24, 2007. Those treatment records indicated that the claimant showed some improvement with the psychiatric medications and psychotherapy that were provided. She reported that she felt overwhelmed at work at times but, on other occasions, she said that she was coping with the stress well. She said that she had mostly good days and that her mood was level. She was working long hours. Her sleep remained fragmented but she did not have any panic attacks during this period. The mental status examination findings during this period indicated that the claimant's appearance, psychomotor activity, speech, and thought processes were normal (Exhibit 26F).

.  .  .  .

The Administrative Law Judge notes that the claimant last saw Dr. Good in October 2007. She did not have any further mental health treatment until January 14, 2010, when she began treatment with Elizabeth Lynn Hutchins, N.P., at Wilson Psychiatric Associates. At intake, Ms. Hutchins rated the claimant's GAF at 52 indicating only moderate impairment of function, even absent treatment for over two years (Exhibit 6F).

Tr. 18-19 ¶ 5.

This evidence substantiates that plaintiff's mental impairments were not so limiting as to prevent plaintiff from working, particularly with the numerous restrictions included by the ALJ in her RFC determination responsive to that impairment. These restrictions included limitation of plaintiff to simple tasks; only occasional interaction with coworkers and supervisors; no interaction with the public; no work at a production pace; and jobs with concrete work decisions based on standardized circumstances, a predictable schedule, and an object-focused work environment. Tr. 15 ¶ 5.

In support of her challenge to the RFC determination, plaintiff again cites to her own testimony. (*See* Pl.'s Mem. 18, 19).[9] As noted, though, the ALJ properly found plaintiff's testimony to be less than fully credible.

_____

[9] Plaintiff states:

Ms. Holland testified that she left her job at Mayo Knitting Mill because of persistent anxiety attacks. These attacks caused a spike in her blood pressure. Ms. Holland also described crying

Plaintiff also relies on the testimony of her husband. (Pl.'s Mem. 19). The ALJ reviewed his testimony in detail. Tr. 18 ¶ 5. The ALJ noted that the husband testified that "during the period at issue, he did everything for the claimant because it all seemed to [be] too much for her." Tr. 20 ¶ 5. However, the ALJ did not credit this opinion (Tr. 20 ¶ 5), and plaintiff did not challenge this determination by the ALJ.

The court concludes that the ALJ's RFC determination is supported by substantial evidence and based on the proper legal standards. Plaintiff's challenge to the RFC determination should accordingly be rejected.

### D. ALJ's Assessment of Plaintiff's Credibility

Plaintiff's final challenge is to the ALJ's credibility determination. (*See* Pl.'s Mem. 18-19). As previously indicated, the court finds no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996); *accord Craig v. Chafer*, 76 F.3d 585, 589 (4th Cir. 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.*; *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv742, 2013 WL 1314781, at

---

spells. She began seeing a psychiatrist frequently. All of her symptoms combined prevented her from performing her job duties. (T pp. 106-107) She also had difficulty being around people. (T p. 108)

(Pl.'s Mem. 19). Plaintiff appears to rely on this same passage in support of her challenge to the ALJ's credibility determination.

*7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *accord Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, in assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 17 ¶ 5. She stated that "the [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment as defined for the period at issue." Tr. 19 ¶ 5.

The ALJ provided specific reasons for her credibility determination. Tr. 15 ¶ 5. Specifically, she stated:

> The claimant has alleged an onset of disability as of January 1, 2004. However, she did not seek any medical treatment for her mental condition until October 2004. At that time, she reported having recurrent panic attacks because her medication had been changed. Her psychiatric medications were adjusted. Her subsequent mental status findings were within normal limits and she did not have any panic attacks during the period at issue. It is noted that she repeatedly reported that she was very busy at work and was working long hours. She said that she was coping with the stress well. She said that she had mostly good days and that her mood was level.
>
> The Administrative Law Judge notes that the claimant last saw Dr. Good in October 2007. She did not have any further mental health treatment until January 14, 2010, when she began treatment with Elizabeth Lynn Hutchins, N.P., at Wilson Psychiatric Associates. At intake, Ms. Hutchins rated the claimant's GAF at 52 indicating only moderate impairment of function, even absent treatment for over two years (Exhibit 6F).

Tr. 19 ¶ 5. The ALJ concluded her explanation by stating that plaintiff's "mental condition would have precluded her from performing complex tasks but this condition was not of such

severity as to prevent her from performing unskilled work." Tr. 19 ¶ 5. These findings by the ALJ are supported by substantial evidence of record.

It is clear that the ALJ did not completely discount plaintiff's allegations. As discussed, her RFC determination includes numerous restrictions responsive to the limitations she alleges. Tr. 15 ¶ 5.

In challenging the ALJ's credibility determination, plaintiff cites to her husband's corroboration of her allegations. (Pl.'s Mem. 19). As noted, however, the ALJ discounted the credibility of the husband's opinion regarding plaintiff's limitations. Plaintiff also relies on the same selected portions of her medical history cited in support of her challenge to the RFC determination. Again, though, plaintiff has failed to show that the ALJ erred in the weight she accorded the medical and other evidence in this case.

The court concludes that the ALJ's determination of plaintiff's credibility was based on proper legal standards and supported by substantial evidence. This remaining challenge to the ALJ's decision should accordingly be rejected.

## III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 22) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 19) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 15 July 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review

by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 1st day of July 2014.

James E. Gates
United States Magistrate Judge